UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN LYNN PETERSON<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>Defendant. | No. 2:14-cv-2753-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from May 27, 2011, through the date of the final administrative decision.  (ECF No. 16.) The Commissioner filed an opposition to plaintiff's motion.[2]  (ECF No. 19.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 11, 13.)

[2] The Commissioner's submission is not styled as a cross-motion for summary judgement on the docket or in its caption.  (ECF No. 19.)  However, it requests judgment in the Commissioner's favor and provides the necessary supporting legal arguments to that effect.  Moreover, the court

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on September 21, 1948, has an associate's degree, and is able to communicate in English. (Administrative Transcript ("AT") 43, 61, 212, 214.)[3] Plaintiff's work history consists of short-term or part-time work as a housekeeper or filing clerk. (AT 181-207.) Plaintiff filed for SSI on May 27, 2011, alleging that her disability began on April 24, 1980, at the age of 31. (AT 61, 72, 92.) Plaintiff alleged that she was disabled primarily due to bipolar disorder, mood swings, depression, and that she was "incoherent" and "emotional." (AT 61.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on April 19, 2013 and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 33-60.) The ALJ issued a decision dated May 10, 2013, determining that plaintiff had not been under a disability, as defined in the Act, between May 27, 2011, and the date of that decision. (AT 19-28.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 8, 2014. (AT 1-3.) Plaintiff then filed this action in federal district court on November 24, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

////

////

////

---

finds that oral argument would not be beneficial as all the necessary facts to decide the case are in the record.

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental history, and the history of her various applications for disability under the Act, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly rejected the opinions of plaintiff's treating physician Dr. Jocelyn Aquino; (2) whether the ALJ erroneously discounted the plaintiff's testimony concerning her symptoms and functional limitations; (3) whether the ALJ improperly considered the third party statement of plaintiff's husband; and (4) whether the ALJ posed proper hypothetical questions to the vocational expert.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4]  At the first step, the ALJ concluded that plaintiff had not

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

engaged in substantial gainful activity since May 27, 2011, the date on which plaintiff filed her claim. (AT 21.) At step two, the ALJ found that plaintiff had the following severe impairments: "affective disorders." (AT 22.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 22-24.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant retains the abilities to engage in simple, routine, repetitive tasks, defined as unskilled occupation with a specific vocational preparation code of 1. She should have no interaction with the public and only limited to superficial contact with supervisors and co-workers (*i.e.*, she should work with things and objects).

(AT 24.)

////

---

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

At step four, the ALJ found that plaintiff had no past relevant work. (AT 27.) At step five the ALJ determined that, in light of plaintiff's age (closely approaching retirement), education (at least high school with the ability to communicate in English), work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (Id.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from May 27, 2011, through the date of the ALJ's decision. (AT 28.)

B. <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*1. Whether the ALJ Improperly Discounted the Opinions of Plaintiff's Treating Physician Dr. Aquino.*

First, plaintiff contends that the ALJ failed to assign the proper weight to the two treating opinions issued by Dr. Aquino.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the

5

1    contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any

2    event need not give it any weight if it is conclusory and supported by minimal clinical findings.

3    Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally

4    supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-

5    examining professional, by itself, is insufficient to reject the opinion of a treating or examining

6    professional.  Lester, 81 F.3d at 831.

7    　　　　Dr. Aquino's first opinion was written on August 2, 2011, on a fill-in-the-blank style

8    evaluation form entitled "Short-Form Evaluation for Mental Disorders."  (AT 388-90.)  Dr.

9    Aquino found that plaintiff was well groomed, had normal motor activity and speech, and no

10   behavior disturbance, but was guarded at the interview and exhibited on and off intrusiveness.

11   (AT 388.)  Dr. Aquino further found that plaintiff was oriented in all spheres, and that her

12   memory was "grossly intact," but did note that plaintiff's concentration was slightly distracted

13   and that her intelligence needed to be further assessed.  (Id.)  Dr. Aquino found that plaintiff's

14   mood was anxious and angry, and that her affect was labile, but that these conditions were

15   stabilizing.  (AT 389.)  Dr. Aquino also found that plaintiff did not have any hallucinations,

16   illusions, content-delusions, content-preoccupations or drug or alcohol abuse.  (Id.)  However, Dr.

17   Aquino did find that plaintiff had on and off disorganization and mildly impaired judgment.  (Id.)

18   Based on these findings, Dr. Aquino diagnosed plaintiff with schizoaffective disorder, bipolar

19   type, and depression, and noted the medications she was on, which included Depakote and

20   Risperdal.  (AT 388.)  She noted that plaintiff previously had a manic episode while off her

21   medications but was stabilizing with the restart of medication, and gave plaintiff a "guarded

22   prognosis."  (AT 390.)

23   　　　　Dr. Aquino then opined that plaintiff could not usefully perform or sustain activities

24   requiring complex instructions, maintaining a schedule and attendance, completing a normal

25   workday and workweek, or responding appropriately to workplace changes.  (Id.)  Dr. Aquino

26

27   [5] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;
28   (6) specialization.  20 C.F.R. § 404.1527.

1   also opined that plaintiff had a fair ability to perform simple instructions, and that her ability to
2   manage funds needed to be further assessed.  (Id.)

3         Dr. Aquino provided a second opinion on March 20, 2012, which was written on a
4   checklist form.  (AT 231-33.)  Dr. Aquino opined that plaintiff's abilities to remember locations
5   and work-like procedures and understand, remember, and carry out short and simple instructions
6   were not significantly limited.  (AT 231.)  However, Dr. Aquino noted that she could not evaluate
7   plaintiff's ability to understand, remember and carry out detailed instructions based on the
8   evidence available to her.  (Id.)  Dr. Aquino further opined that plaintiff's abilities to maintain
9   attention and concentration for extended periods, keep a schedule, maintain regular attendance,
10  and be customarily punctual were moderately to markedly limited.  (Id.)  Dr. Aquino also opined
11  that plaintiff's ability to sustain an ordinary routine without special supervision was moderately
12  limited.  (Id.)

13        Dr. Aquino opined that plaintiff's ability to make simple work related decisions was
14  mildly to moderately limited.  (AT 232.)  Dr. Aquino also determined that plaintiff's abilities to
15  work in coordination or proximity to others without being distracted and be aware of and able to
16  respond to hazards were moderately to markedly limited.  (Id.)  Dr. Aquino further opined that
17  plaintiff's abilities to interact appropriately with the public, ask simple questions or get assistance,
18  and travel in unfamiliar places or use public transportation were moderately limited.  (Id.)  With
19  regard to all other aspects of mental functioning, including the abilities to complete a normal
20  workday and workweek and perform at a consistent pace without an unreasonable number and
21  length of rest periods, Dr. Aquino checked boxes indicating that she was unable to give an
22  evaluation of plaintiff based on the available evidence.  (Id.)

23        In addition to the above opinions,  Dr. Aquino noted that "[plaintiff] is currently
24  functional at her level at home" and that she "does house chores, grocery shopping requiring
25  modest to minimal supervision."  (AT 233.)  Dr. Aquino also stated that plaintiff "has problems
26  with concentration recently" and "has not worked since [the] 1980s."  (Id.)
27  ////
28  ////

7

The ALJ rejected Dr. Aquino's opinions first because they were conclusory and inconsistent with the record, including Dr. Aquino's own examination findings provided in both her first opinion and treatment notes. Second, the ALJ determined that Dr. Aquino's opinions were contradicted by Dr. McCray's examining opinion, which was supported by independent clinical findings. Plaintiff contends that these reasons were insufficient and were not supported by substantial evidence from the record. This contention is not well taken, however, for the reasons discussed below.

First, as the ALJ discussed, the extreme mental limitations opined by Dr. Aquino were not supported by the objective medical findings in the record, including those made by Dr. Aquino herself. This was a specific and legitimate reason for discounting Dr. Aquino's opinion. See Meanel, 172 F.3d at 1113 (9th Cir. 1999) (holding that the ALJ properly discounted a treating physician's opinion that was "conclusory and unsubstantiated by relevant medical documentation"); Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)) ("[T]he ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'"). Moreover, the substantial evidence discussed below supported it.

Between the dates on which she issued her two opinions, Dr. Aquino saw plaintiff four times, on August 8, 2011 (AT 427), October 25, 2011 (AT 425), January 24, 2012 (AT 423), and March 20, 2012 (AT 421). In her clinical notes for all of these visits, Dr. Aquino found that plaintiff's mental impairments were stable, and noted that plaintiff's husband repeatedly mentioned that plaintiff was "doing well" on her medication and was "back to her baseline self." (AT 421-27.) During the March 20, 2012 appointment, which occurred on the same day she issued her second opinion, Dr. Aquino specifically found that plaintiff's mood was stable, her bipolar disorder was in remission, and that she had "no behavioral problems," conclusions that were flatly inconsistent with the extreme mental limitations Dr. Aquino assessed. (AT 231-33, 421.)

Furthermore, subsequent to the date on which Dr. Aquino issued her second opinion, she saw plaintiff four additional times. On May 1, 2012, Dr. Aquino repeated her finding that

1    plaintiff's bipolar disorder was in remission and noted that plaintiff was doing household chores,
2    cooking, and grocery shopping.  (AT 419.)  On July 10, 2012, September 4, 2012, and November
3    27, 2012, plaintiff saw Dr. Aquino for routine follow ups, all of which resulted in Dr. Aquino
4    finding that plaintiff's symptoms were fairly controlled, had improved from initial symptoms, and
5    that, despite some subjective difficulties in functioning, plaintiff was able to continue her usual
6    routine at home.  (AT 437, 440, 443.)  At each of these last three visits, Dr. Aquino conducted a
7    clinical exam evaluating 21 aspects of plaintiff's mental condition, and found that plaintiff was
8    normal, average, or unremarkable in every aspect except mood which was consistently anxious.
9    (AT 438, 441, 444.)  Based on these findings, Dr. Aquino repeatedly concluded that plaintiff's
10   bipolar disorder was in remission and recommended that plaintiff continue her medication and
11   follow an exercise program.  (AT 438-39, 441-42, 444-45.)

12   　　　　While some of the earliest dated treatment notes in the record developed by Dr. Aquino
13   indicate that plaintiff suffered a manic episode in late March of 2011, prior to the relevant period,
14   that episode resulted from plaintiff's brief inability to obtain refills of her psychotropic
15   medications, and later notes developed by Dr. Aquino show that plaintiff's mental condition
16   stabilized after she was able to once again receive her medications.  (AT 345-52.)  In short,
17   nowhere in the treatment notes and clinical findings generated by Dr. Aquino is there support for
18   the disabling limitations which she opined.  While a treating physician is entitled to deference in
19   her interpretation of symptoms, an ALJ is not expected to ignore a diagnosis that a disease is in
20   remission or fail to note the absence of any abnormalities in a clinical exam.  Meanel, 172 F.3d at
21   1114.

22   　　　　Plaintiff also argues that the ALJ's second reason for discounting Dr. Aquino's opinion—
23   that it conflicted with the well-reasoned examining opinion of Dr. McCray—was not specific and
24   legitimate and not supported by substantial evidence.  This argument is without merit.  Dr.
25   McCray, a licensed psychologist, examined plaintiff on October 28, 2011, and gave an opinion.
26   (AT 395-98.)  Dr. McCray reviewed plaintiff's Solano County records, Kaiser records, Dr.
27   Aquino's Short-Form Evaluation for Mental Disorders, and plaintiff's SSA 3368 form.  (AT 395.)
28   Dr. McCray found that plaintiff was normal in her attitude, speech, and behavior, and could

follow a three-step command, though she was easily overwhelmed. (AT 396.) Dr. McCray also found that plaintiff was oriented, and had adequate attention and concentration for conversation, though "[a]t times, she seemed to have problems formulating her thoughts." (Id.) She could spell words backward and forward and her memory was grossly intact. (AT 396-97.) However, plaintiff had difficulty with her personal timelines, and denied symptoms that were documented in her medical records. (AT 397.) Dr. McCray further found that plaintiff could recall three out of three items both immediately and after a brief delay. (Id.) All of the remaining factors which Dr. McCray evaluated, including mathematical calculations, fund of knowledge, verbal abstractive abilities and proverb interpretation were adequate or grossly intact. (Id.)

Based on these findings, Dr. McCray opined that plaintiff's ability to relate to others, including supervisors, co-workers, and the public, was essentially unimpaired. (Id.) Dr. McCray opined that plaintiff's attention and concentration for simple tasks was unimpaired, and her ability to perform multi-step and higher level cognitive tasks "appears to be grossly unimpaired from a cognitive point of view . . . ." (Id.) Finally, Dr. McCray opined that plaintiff was capable of managing her own funds. (Id.) Dr. McCray's opinion, which found that plaintiff had no more than a few mild mental limitations, was supported by an independent clinical examination and conflicted with the extreme mental limitations opined by Dr. Aquino. Therefore, the ALJ's reliance on Dr. McCray's opinion constituted a specific and legitimate reason for discounting Dr. Aquino's opinions. Andrews, 53 F.3d at 1041.

Plaintiff argues that Dr. McCray did not review all of plaintiff's records, therefore making it improper for the ALJ to rely on Dr. McCray's opinion. To be sure, the regulations require that a consultative examiner be given any necessary background information about the plaintiff's condition. 20 C.F.R. § 416.917. Background information is essential because consultative exams are often utilized "to try to resolve an inconsistency in the evidence." 20 C.F.R. § 416.919a(b). An opinion on a documented medical problem given after only a one-shot examination, without recourse to the plaintiff's available medical records, is not one which can generally be relied upon. This limitation is especially true in the case of mental health impairments, which may manifest to different degrees on different occasions.

Here, however, Dr. McCray's examination report explicitly states that she reviewed the Solano County Health and Social Services Notes (AT 332-62), Dr. Paz's Kaiser treatment notes (AT 363-82), Dr. Aquino's Short-Form Evaluation for Mental Disorders, in addition to her independent examination of plaintiff. (AT 382-92.) These were all of the medical records available at that point in time. (AT 295; see also AT 31-32.) Furthermore, as the ALJ noted in her opinion, no further records from Solano County were provided to the Commissioner until just before the hearing before the ALJ. (AT 26, 31.) Thus, there is no indication that the Commissioner failed to provide Dr. McCray with all the records that were available at the time of Dr. McCray's evaluation.

In addition, even if a supplemental opinion may be required in some cases to provide the consultative examining physician an opportunity, such as where the subsequently-generated treatment records and evidence show a material change in the claimant's condition, such circumstances are not present in this case. The treatment records post-dating Dr. McCray's evaluation generally do not document a material change in plaintiff's mental health. Indeed, with the exception of Dr. Aquino's second opinion, plaintiff's mental health records developed subsequent to Dr. McCray's opinion, including Dr. Aquino's treating notes, generally show that plaintiff suffered from the same mental impairments diagnosed by Dr. McCray and that the symptoms of those impairments were largely mild and well controlled with medication. (E.g., AT 419-28, 438, 440-45.) In addition, the records do not show that plaintiff suffered another manic episode or that her mental condition was in decline. As such, Dr. McCray already considered these reported symptoms and impairments as part of her assessment. Accordingly, the mere fact that Dr. McCray reviewed only some of plaintiff's mental health records developed over the course of the relevant period did not reduce the probative value of the functional limitations she opined and the ALJ was permitted to rely on the fact that Dr. McCray's findings conflicted with Dr. Aquino's opinions as a specific and legitimate reason for discounting the latter physician's opinion.

In sum, the ALJ provided multiple specific and legitimate reasons in her decision to discount Dr. Aquino's opinions. Accordingly, the ALJ did not err in considering and weighing

that physician's opinions.[6]

2. *Whether the ALJ Erroneously Discounted Plaintiff's Testimony*

Second, plaintiff contends that the ALJ improperly rejected plaintiff's own testimony regarding the extent of her symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

---

[6] Plaintiff also argues more generally that the ALJ improperly assessed plaintiff's RFC. However, plaintiff's entire basis for this argument is that the ALJ failed to include several limitations opined by Dr. Aquino. Because the ALJ properly discounted Dr. Aquino's opinions for the reasons discussed above, she was not required to adopt or otherwise incorporate into her RFC determination the functional findings contained in Dr. Aquino's opinions that she had rejected. Accordingly, plaintiff's contention regarding the ALJ's overall RFC determination is without merit.

between his testimony and his conduct, [claimant's] daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

In support of her adverse credibility determination, the ALJ reasoned that plaintiff's mental impairments were well controlled with medication and that the medical evidence in the record did not support the level of symptom severity claimed by plaintiff . (AT 24-25.) These were clear and convincing reasons for finding plaintiff's testimony less than fully credible that were supported by substantial evidence in the record.

First, the ALJ correctly noted that plaintiff's mental impairments, her bipolar disorder in particular, were well controlled when she was using psychotropic medication. A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). A plaintiff's economic difficulty or inability to pay for medication does not change this legal conclusion. Warre, 439 F.3d at 1006.

Here the record repeatedly indicates that plaintiff's mental condition was stable when she was using her prescribed psychotropic medications. (AT 374, 388, 421-27, 438-39, 441-42, 444-45.) In fact, the only instance of plaintiff showing clinically verifiable symptoms that were more than mild was when she suffered a psychotic episode just prior to the relevant period because she was no longer using her prescribed medications. (AT 345-62.) The record indicates that plaintiff's noncompliance with her medications was a result of her inability to continue paying her medical insurance premiums. (Id.) However, this fact does not mean that the ALJ was prohibited from considering the fact that plaintiff's mental impairments were well controlled when on appropriate medications to support her adverse credibility determination. See Warre, 439 F.3d at 1006 (holding that the claimant's economic circumstances do not preclude an ALJ

13

1 from relying on the effectiveness of the claimant's medications to find the claimant not disabled
2 because "[i]mpairments that can be controlled effectively with medication are not disabling for
3 the purpose of determining eligibility for SSI benefits").

4     The ALJ also determined that plaintiff's allegations of disability conflicted with the
5 objective medical evidence in the record.  "[A]fter a claimant produces objective medical
6 evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints
7 based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."
8 Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341,
9 345 (9th Cir. 1991)).  "Although lack of medical evidence cannot form the sole basis for
10 discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the
11 ALJ to consider."  Burch, 400 F.3d at 681.

12     Here the ALJ relied on the generally consistent clinical findings from throughout the
13 relevant period indicating that plaintiff was normal, average or unremarkable in every area of
14 mental functioning except for her anxious moods and that the symptoms of her bipolar disorder
15 were in remission. (AT 25-27 (discussing findings from the medical evidence in the record).)
16 Accordingly, there existed substantial evidence in the record to support the ALJ's proper
17 reasoning.

18     In light of the above, the court finds that the ALJ provided specific, clear, and convincing
19 reasons for discounting plaintiff's testimony that she suffered from disabling symptoms and
20 functional limitations beyond the limitations assessed in the ALJ's RFC that were supported by
21 substantial evidence from the record.

22         3. *Whether the ALJ Improperly Considered the Statement by Plaintiff's Husband*
23     Plaintiff also contends that the ALJ improperly discounted the third party statement
24 provided by plaintiff's husband.  "[C]ompetent lay witness testimony cannot be disregarded
25 without comment" and "in order to discount competent lay witness testimony, the ALJ must give
26 ////
27 ////
28 ////

reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted).[7]

As an initial matter, the court notes that the ALJ actually found certain aspects of plaintiff's husband's statement "generally credible" and determined that those representations did not support a finding that plaintiff was disabled. (AT 25.) In particular, the ALJ found that plaintiff's husband's statements to her doctors, that plaintiff was able to perform her daily routines and was stable on medication, were persuasive and that they conflicted with plaintiff's general claim of disability. (AT 25, 419, 421, 423, 425, 427.) The ALJ similarly found that his written testimony that plaintiff was functional at home and able to do chores, including grocery shopping for up to two hours, cooking for half an hour, feeding and bathing her two dogs, and washing clothes, vacuuming and cleaning for two hours, indicated that plaintiff's impairments were not as disabling as she alleged. (AT 242-43, 261-63, 290-91, 430-33.) Indeed, such statements did not support plaintiff's broad allegations that her mental impairments imposed limitations so severe as to render her disabled.

Plaintiff appears to object to the ALJ's treatment of plaintiff's husband's statement because the ALJ did not adopt the functional limitations seemingly implied in some of his statements that were more severe than those the ALJ ultimately determined despite finding his overall statement generally credible. However, any inconsistency or ambiguity between the daily activities reported by plaintiff's husband and the limitations he may have broadly alleged was for the ALJ to resolve, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal

---

[7] Plaintiff asserts in her motion for summary judgment that the ALJ was required to use the "specific and legitimate" reasons standard when assessing plaintiff's husband's testimony. However, the controlling Ninth Circuit case law regarding the standard used to assess third party lay witness testimony holds that an ALJ is only required to provide reasons "germane to each [third party] witness" in support of his or her decision to discount that testimony. Molina, 674 F.3d at 1114. Accordingly, the court considers the ALJ's treatment of plaintiff's husband's testimony under the "germane reasons" standard rather than the more stringent one plaintiff advances.

about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). Furthermore, even assuming, without deciding, that the ALJ impliedly rejected any statements by plaintiff's husband's implying that plaintiff suffered from debilitating mental limitations, such statements would have largely echoed plaintiff's own claims. Accordingly, any error in not explicitly re-stating, or incorporating by reference, the reasons the ALJ properly gave for discounting plaintiff's testimony with respect to the similar statements provided by plaintiff's husband would have been harmless. See Molina, 674 F.3d at 1115-22.

    4. *Whether the ALJ Posed Proper Hypothetical Questions to the Vocational Expert*

Finally, plaintiff argues that the ALJ erred at step five by relying on VE testimony that lacked evidentiary value because it was based on improper hypotheticals and information.

An ALJ may pose a range of hypothetical questions to a vocational expert, based on alternate interpretations of the evidence. However, the hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC determination, must account for all of the limitations and restrictions of the particular claimant that are supported by substantial evidence in the record as a whole. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted). However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006). Furthermore, as the Ninth Circuit Court of Appeals has observed, an ALJ may synthesize and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to the vocational expert) without repeating each functional limitation verbatim in the RFC assessment or hypothetical. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence, or pace, because the assessment was

consistent with the medical evidence).

Plaintiff asserts that because the ALJ failed to properly evaluate the opinion evidence and find plaintiff's and her husband's testimony credible, the hypotheticals she posed to the VE based on her RFC determination were improper because the RFC failed to reflect all of plaintiff's limitations.  This argument, however, lacks merit because, for the reasons stated above, the ALJ properly evaluated the medical evidence and the non-medical testimony of plaintiff and her husband.  Because the ALJ discounted Dr. Aquino's opinion and found plaintiff's statements regarding the extent of her impairments not fully credible, she was not required to include any of plaintiff's alleged limitations beyond those already included in the RFC determination.  The ALJ posed hypotheticals to the VE that were based on the limitations outlined in the ALJ's RFC determination, which were supported by substantial evidence from the record.  (AT 55-56.)  Therefore, plaintiff's argument is not well taken.

## V.     CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  April 7, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE